OPINION
Plaintiff-appellant Chester Prather filed this personal injury action pursuant to R.C. 955.28(B) [strict liability for injuries caused by dogs] in the Montgomery County Common Pleas Court. The matter was tried before a jury. However, at the close of all the evidence, the trial court directed the verdict in favor of the defendants. Prather appeals, contending that the trial court erred in directing the verdict, because reasonable minds could conclude that the defendants had not proven the affirmative defense of trespass. He further contends that the trial court erred by finding that the defense applies to both criminal and civil trespass.
Based upon the record before us, we find that the jury could only reach one conclusion — that Prather was trespassing at the time of the alleged injury. We further find that the trial court correctly determined that the affirmative defense of trespass includes both criminal and civil trespass. Accordingly, the judgment of the trial court is Affirmed.
 I
Chester Prather sustained an injury to his ankle on July 14, 1997, while he was employed as a delivery driver with Roadway Package Service ("RPS"). Prather filed suit against defendants-appellees Joe and Janet Whitaker for the injury, which he alleged to have been caused as a result of being chased by the Whitakers' dog while making a delivery to their home on Old Troy Pike in Huber Heights.[1] The case was tried before a jury.
Prather testified that he decided to back his delivery truck into the Whitakers' driveway because it was situated on a busy roadway and he did not want to have to back out into traffic after making the delivery. He testified that he stopped the truck approximately two to three feet from a fenced-in portion of the Whitakers' property.
Prather testified that he took a package to the Whitakers' front door, but that no one answered the door when he knocked. He therefore decided to leave the package inside the fenced-in area. He testified that he did not see any "No Trespassing" signs on the fence and that he did not remember any lock on the gate. After lifting the gate latch and stepping through, Prather placed the package up against the fence and began to use his scanner to process the delivery. At that time, he heard a growl and observed a dog showing its teeth and approaching him. According to his testimony, Prather began backing out of the fenced area. At some point, the dog jumped up on Prather and bit through his clipboard. Prather started running and felt a "pop or a thud" in his "ankle or leg." He testified that he kept running and was able to jump into the delivery truck.
Prather further testified that Mrs. Whitaker walked out of the house and brought him his clipboard. He testified that he did not recall getting back out of the truck. Thereafter, according to his testimony, he proceeded with his delivery route, but had to pull over to rest for about thirty to forty-five minutes because he was shaking. He stated that his right ankle began to swell and ache. He further testified that he was involved in an accident later that day when he sideswiped a car. However, he testified that although he began limping, he was able to make about twenty-seven more deliveries that day. Subsequently, Prather sought medical attention for his ankle, which had been fractured.
Mrs. Whitaker testified that she was going to bed after working the night shift, when she heard Prather knock on the door. She testified that by the time she got dressed and went outside, she saw Prather jumping into his delivery truck. She also testified that her dog was standing in the driveway. Mrs. Whitaker retrieved the dog and observed the package inside the fence. She testified that Prather exited the truck and retrieved his clipboard. She further testified that he informed her that he had opened the gate, and that he was not hurt.
Mr. Whitaker testified that the fence, which is six feet tall, was erected in order to keep his dogs from wandering. He testified that the gate used by Prather was secured with a metal gate latch which had a "scissor lock" in it. Mr. Whitaker stated that the scissor lock had to be squeezed and removed from the latch before the gate could be opened. He also testified that a "No Trespassing" sign was posted on the fence. The sign and the scissor lock were in use on the day Prather made the delivery.
At the close of all the evidence defense counsel made a motion for a directed verdict. The trial court found that, based upon the evidence, reasonable minds could only conclude that Prather was a trespasser at the time he entered the fenced-in portion of the Whitaker property. Therefore, the trial court directed a verdict in favor of the Whitakers, finding that they had established, as a matter of law, the affirmative defense of trespass. Prather appeals from the judgment against him.
 II
Prather's Second Assignment of Error states:
 THE TRIAL COURT ERRED BY GRANTING A DIRECTED VERDICT IN FAVOR OF DEFENDANT/APPELLEE IN THAT REASONABLE MINDS COULD CONCLUDE THAT PLAINTIFF/APPELLANT WAS AN IMPLIED INVITEE AND/OR A LICENSEE AT THE TIME OF THE DOG ATTACK.
Prather contends that the trial court erred in granting a directed verdict in favor of the Whitakers because the jury could reasonably have found that he did not trespass on the Whitakers' property.
A motion for directed verdict must be granted when the trial court finds, after construing the evidence most strongly in favor of the party against whom the motion is made, that reasonable minds could reach only one conclusion and that conclusion is adverse to the party opposing the motion. Civ.R. 50(A)(4). "In deciding a motion for a directed verdict, neither the weight of the evidence nor the credibility of the witnesses is to be considered." Cater v. City of Cleveland (1998), 83 Ohio St.3d 24,33, citation omitted. "Instead, `[w]hen a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury.'" Id., citation omitted. "The motion for directed verdict must be denied if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions." Id., citation omitted.
There is no doubt that Prather had implied permission, at least, to be on the unfenced portion of the Whitakers' property for the purpose of delivering the package that they had ordered. However, the relevant issue in this case is whether that implied permission extended to the fenced-in area of their yard. The area was obviously delimited by a six-foot high fence with a "No Trespassing" sign posted on the fence. The Whitakers testified that they had posted a "No Trespassing" sign on the fence, which was present at the time of the alleged injury. Prather's testimony does not contradict the Whitakers:
 Q: Are you suggesting that you are unable to see that sign that day, or are you suggesting that sign wasn't there?
 A: I am not suggesting that it is not there. If it was there, I didn't see it.
Prather testified that his delivery truck would have been backed up in such a way that it would have blocked the sign. Prather also stated that he would expect a sign of that tenor to prevent people from entering the demarked area. Finally, Prather admitted that RPS, and he as its employee, had no authorization, either written or oral, to enter the fenced-in area.
We conclude that the Whitakers' use of a physical barrier, in conjunction with the use of a posted sign placed where a reasonable person would be able to see it, gave adequate warning of the intent to restrict access to the fenced-in area of the yard. Regardless of whether Prather's actions prevented him from actually observing the sign, the area was restricted. Given that Prather did not dispute the evidence that the sign was posted, and that he still proceeded to enter a clearly delimited area, we conclude that the trial court correctly found that reasonable minds could only find that he was a trespasser.
Accordingly, the Second Assignment of Error is overruled.
 III
Prather's First Assignment of Error states as follows:
 THE TRIAL COURT ERRED BY GRANTING A DIRECTED VERDICT IN FAVOR OF DEFENDANT/APPELLEE IN THAT O.R.C. § 955.28(B) REQUIRES THAT THE AFFIRMATIVE DEFENSE OF TRESPASS BE ESTABLISHED IN ACCORDANCE WITH THE STANDARD SET FORTH IN CRIMINAL TRESPASS, NOT CIVIL TRESPASS.
Prather contends that the trial court erred in finding that civil trespass is an affirmative defense to the strict liability provided for in R.C. 955.28(B). He argues that only criminal trespass is contemplated as an affirmative defense to the statute.
R.C. 955.28(B) provides as follows:
 The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.
(Emphasis added).
Prather argues that because the statute uses the phrase "*** or other criminal offense ***", it manifests an intent to limit the affirmative defense to criminal trespass.
Several appellate courts in Ohio have addressed the issue raised by Prather, and have held that the defense includes civil trespass. See, Buttermore v. Thompson (June 22, 1992), Stark App. No. CA 8754, unreported; Bruggeman v. Fishbaugh (July 21, 1994), Shelby App. No. 17-94-4, unreported; and, Padgett v. Sneed (July 19, 1995), Hamilton App. No. C-940145, unreported.
The Buttermore court noted that the previous version of R.C.955.28 provided that the dog owner was not liable if the person injured "*** was committing a trespass on the property of the owner, or was teasing, tormenting, or abusing such dog ***." Id.
The court found that the language of the later version of the statute expanded, rather than reduced, the exceptions to strict liability. Id.
Plausible arguments support both views on this issue. As Prather contends, the phrase "other criminal offense" could be viewed as modifying the word "trespass." However, we note that had the General Assembly intended to limit the defense to criminal trespass, it could have used the phrase "criminal trespass," instead of the more general word "trespass".
In any event, we conclude that including civil trespass is a more rational construction of the statute. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Garrard v. McComas (1982), 5 Ohio App.3d 179,181, citing 2 Restatement of Torts 2d 171, Section 329. Regardless whether the trespass is of a civil or criminal nature, the person is on the property without permission. Persons who have clearly manifested an intent to restrict access to a portion of their property, and have enclosed their dogs within that restricted area, should enjoy a reasonable expectation that the restriction will not be disregarded.
Prather's First Assignment of Error is overruled.
 IV
Both of Prather's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
 ___________________ FAIN, J.
BROGAN and YOUNG, JJ., concur.
[1] Prather alleged that the Whitakers were liable for his injuries pursuant to R.C. 955.28, which imposes strict liability upon the owner of a dog that causes injury unless the injured person is trespassing on the property of the owner.